UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: ) | |
| Yvita Abequibel, ) | Case No. 05 B 16757 |
| ) | |
| Debtor. ) | |
| ) | Honorable John D. Schwartz |
| ) | |
| ) | |
| Estrella de Guzman Torre, ) | Adv. No. 06 A 00682 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| Yvita Abequibel, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

The matter before the court is the adversary complaint filed by plaintiff, Estrella de Guzman Torre ("Torre"), alleging that the discharge order entered in the bankruptcy case of debtor, Yvita Abequibel ("Debtor" or "Abequibel") should be revoked, pursuant to §727(d) of the Bankruptcy Code, 11 U.S.C. §§101, et seq. The matter was tried and the court's findings of fact and conclusions of law follow.

**Findings of Fact**

The Debtor immigrated to the United States from the Phillippines in 1980. She obtained a college degree in the Phillippines and worked for the Department of Justice where she handled court records. She became a citizen of the United States in 1996. Debtor's Testimony.

The Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code in

this court on April 28, 2005. Plaintiff's Exhibit 1. On July 19, 2005, the trustee appointed to the case filed a No Asset Report with the Clerk of the Court. On August 26, 2005, an Order of Discharge was entered in the Debtor's bankruptcy. On March 1, 2006, upon motion of Torre, this Court entered an order reopening the case. On March 7, 2006, the complaint commencing this adversary proceeding was filed by Torre, requesting revocation of the Debtor's discharge. On March 30, 2006, the Debtor filed amended Schedules A and I and an amended Statement of Financial Affairs. At that time, she added "real estate located at 637 Linsey, Schaumberg, Illinois" to Schedule A. She also added income from Mid-Am Home Health Care to Schedule I. Debtor's Exhibit 1.

The Property

On December 2, 1996, a Warranty Deed was issued from Phillip A. Delmonte and Birgit S. Delmonte to Jessie Joel Abequibel (the Debtor's son), Carmelo Abequibel (the Debtor's husband) and Ana Cesista (the Debtor's sister). Plaintiff's Exhibit 4. The deed was for a single family residence commonly referred to as 637 Linsey, Schaumberg, Illinois ("Property"). On the same date, a mortgage was executed between Option One Mortgage Corporation and Jessie Joel Abequibel, Carmelo Abequibel and Ana Cesista. Debtor's Exhibit 3. The Debtor signed this document, with an indication that she was signing as the wife of Carmelo Abequibel, "solely for the purpose of waiving her homestead rights."

On the same date, December 2, 1996, Ana Cesista executed a Quit Claim Deed, quitclaiming her interest in the Property to Jessie Joel Abeqibel, Carmelo Abequibel, Sandra Silviera-Abequibel and the Debtor ("Quit Claim Deed"). Plaintiff's Exhibit 5.

On April 18, 1997, the Debtor filed a bankruptcy case in the Eastern District of Wisconsin ("Wisconsin Bankruptcy"). Plaintiff's Exhibit 16. She received a discharge in that case on August 5, 1997.

On May 7, 1998, a mortgage was executed between The Money Store and Jessie Joel Abequibel, Carmelo Abequibel and the Debtor ("Mortgage"). Plaintiff's Exhibit 7. The Debtor executed the Mortgage as one of the borrowers. The Quit Claim Deed, showing the Debtor's title to the Property, was finally recorded on December 5, 1998, two years after it was executed.

On May 20, 2004, a complaint was filed in the Circuit Court of Cook County to foreclose on the Mortgage entitled <u>Bank of New York v. Abequibel</u>, et al. Case No. 2004 CH 08150 ("Foreclosure Suit"). The Debtor was a named defendant. Personal service of the foreclosure complaint was made on her on August 28, 2004, as evidenced by the affidavit of the process server. Plaintiff's Exhibit 9. On July 1, 2005, J. Luis Nava caused a Vendee's Lien to be executed against the Residence. Plaintiff's Exhibit 11. This lien was recorded on September 1, 2005. A settlement statement shows that the Property was sold to Rene Warner in December 2005 or January 2006 with a total of $31,838 in proceeds going to the sellers, Carmelo Abequibel, Jessie Joel Abequibel and the Debtor. Debtor's Exhibit 8.

When the Debtor filed her bankruptcy petition on April 28, 2005, her schedules indicated that she did not own any real estate. She did not list the holder of the Mortgage as a secured creditor even though she signed the Mortgage. She did not list the lienholder as a creditor. She did not disclose the fact that she was a defendant in the Foreclosure Suit even though she had been personally served with process. A meeting was held pursuant to §341 of the Bankruptcy

Code. At that meeting, the following exchange took place between the case trustee and the Debtor.

> Q. Ma'am I am going to show you your bankruptcy papers. This was electronically filed so your signature does not show up here but did you in fact sign this document?
>
> A. Yes Sir. Yes Ma'am, sorry.
>
> Q. Did you read it before you signed it?
>
> A. Yes.
>
> Q. And was all the information completed on the document at the time you signed it?
>
> A. Yes Ma'am.
>
> Q. Is everything in your bankruptcy papers true and correct?
>
> A. Yes Ma'am.
>
> \* \* \*
>
> Q. Did you read it through and understand it?
>
> A. Yes Ma'am.
>
> \* \* \*
>
> Q. Do you own any real estate?
>
> A. No Ma'am.
>
> Q. Have you ever owned any real estate?
>
> A. No Ma'am.
>
> \* \* \*
>
> Q. You're married?

A. Yes Ma'am.

Q. Does your husband have any assets that does not show up on your bankruptcy schedules, house or car or any assets?

A. Yes.

Q. What does he have?

A. A car.

\*   \*   \*

Q. Other than that, any other assets that do not show up on your bankruptcy schedules?

A. No Ma'am.

Plaintiff's Exhibit 3.

Mid-Am Home Health Care, Inc.

On September 5, 2002, the Debtor filed an Application for Reinstatement of Domestic or Foreign Corporation with the Illinois Secretary of State for a company named Mid-Am Home Health Care, Inc. ("Mid-Am"). On the same date, the Debtor filed the Annual Reports for the years 2000-2002 for Mid-Am wherein the Debtor was listed as "President." On December 22, 2003, the Debtor filed the Annual Report for Mid-Am wherein the Debtor was listed as "Treasurer."

On or about May 23, 2004, the Debtor, in her capacity as an owner of Mid-Am, offered Torre the opportunity to become a shareholder of Mid-Am and a job as Mid-Am's bookkeeper. On or about June 8, 2004, a meeting was held between the Debtor and Torre. At the meeting, the

Debtor presented Torre with a Special Meeting of Shareholders Partnership Agreement, Shareholder Agreement and a document labeled "Paid Up" Stockholders for Torre's signature. Each of the documents indicated that the Debtor was a stockholder of Mid-Am. Plaintiff's Exhibit 14.

Her schedules reflected that she had an interest in a business called Companion Care that was going to dissolve in "Summer 2005". She did not disclose her interest in Mid-Am although Torre was listed as a creditor. Plaintiff's Exhibit 1. Her Schedule I did not indicate any income from that or any other business.

### Conclusions of Law

Section 727(d)(1) of the Bankruptcy Code provides that "the court shall revoke a discharge granted under subsection (a) of this section if – (1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge ..."

A plaintiff must prove two elements to support the revocation of a discharge under this section of the statute. First, that the discharge was obtained through fraud and second, that the plaintiff lacked knowledge of the fraud until after the discharge was granted. Zedan v. Habash (In re Habash), 360 B.R. 775, 778 (N.D. Ill. 2007); State Bank of India v. Kaliana (In re Kaliana), 202 B.R. 600 (Bankr. N.D. Ill. 1996). The plaintiff must prove its case by a preponderance of the evidence. Rezin v. Barr (In re Barr), 207 B.R. 160, 165 (Bankr.N.D. Ill. 1997); Kaliana at 603-604.

Fraud-in Fact

The evidence was overwhelming that the Debtor committed a fraud on the court and her creditors. For the purpose of the first element of the statute, fraud means fraud in fact. Kaliana, 202 B.R. at 604. Therefore, Torre must demonstrate that the Debtor acted with an intent to deceive. Id. "A bankruptcy court's finding of fraudulent intent may be based on inferences drawn from a course of conduct. [Citations omitted]. Additionally, fraudulent intent may also be inferred from all of the surrounding circumstances." In re Yonikus, 974 F.2d 901, 905 (7th Cir. 1992).

"[A] debtor's reckless disregard for the truth of the information contained in its bankruptcy statements and schedules is sufficient to bar a discharge and may be regarded as the equivalent of actual fraud on the part of a debtor who submits false or inaccurate information. [Citations omitted]. Reckless disregard means 'not caring whether some representation is true or false ...' In re Chavin, 150 F.3d 726, 728 (7th Cir. 1998). If the bankruptcy schedules reflect such an indifference to the truth then no further evidence of fraud is necessary. [Citations omitted]." Warsco v. Saylor (In re Saylor), 339 B.R 190, 191 (Bankr. N.D. Ind. 2006).

The Debtor's sister executed a quitclaim deed for the Property to the Debtor in December 1996. The Debtor executed a mortgage, secured by the Property, on May 7, 1998. She was personally served with process commencing a foreclosure action on the property on August 28, 2004. It is not credible to believe that she did not know that she owned the Property or had an interest in it as of the Petition Date. Her testimony that she did not understand that she owned the Property is also not credible. She obtained a college degree in the Phillippines and worked for the Department of Justice there, where she handled court records. She was not an

unsophisticated debtor. Neither was she an inexperienced debtor, having filed a bankruptcy case previously in Wisconsin.

The Debtor defended herself with two arguments. First, she feigned ignorance of the fact that she owned the Property and she amended her schedules upon her discovery of this fact.[1] The court finds her testimony in this regard to lack credibility. Second, she argued that she disclosed her husband's ownership of the property to her attorney and that her attorney failed to follow up that disclosure with an investigation of title to the Property. Her attorney was called to testify at trial and she testified that the Debtor told her that the Property was in the Debtor's husband's name and that she believed the Debtor.

"'[T]he law in this circuit is that an attorney's conduct must be imputed to his client in *any* context.'" Warsco v. Saylor (In re Saylor), 339 B.R. 190, 193 (Bankr. N.D. Ind. 2006), *quoting* U.S. v. DiMucci, 879 F.2d 1488, 1496 (7th Cir. 1989). "There is no 'right to effective assistance of counsel in a civil case.'" Id. *quoting* Watson v. Moss, 619 F.2d 775, 776 (8th Cir. 1980). "Ultimately, it is debtors who are responsible for the accuracy of the information contained in their bankruptcy schedules and statement of affairs ... it is they who have the duty to carefully consider all of the questions posed and to see that they are completely and correctly answered. [Citations omitted]. While the court cannot prevent debtors from taking a recklessly indifferent approach toward the information they provide, should information which they have sworn to be true and correct prove to be materially false, debtors must accept the risks which

---

[1] The court is not impressed that she amended her schedules three weeks after Torre filed this adversary proceeding. See Structured Asset Services, LLC v. Self (In re Self), 325 B.R. 224, 249 n.6 (Bankr. N.D. Ill. 2005)(substantial omissions in a debtor's schedules not excused by amendment) and Rogers v. Boba, 280 B.R. 430, 435 (Bankr. N.D. Ill. 2002)(debtor's amendment of schedules does not bar denial of discharge).

come from that indifference." Id.

In Warsco, the debtors' schedules and statement of affairs were materially false. The question addressed by the court following a trial was whether the debtors were sufficiently responsible for the falsehoods so that their discharge should have been revoked. The debtors took the position that their attorney failed to properly assist them, that they were instructed to complete a questionnaire and sign the documents that were prepared. Neither debtor had completed high school and they claimed that they did not understand what what was being asked of them. They argued that if their attorney had been more attentive, their failure to disclose the sale of their business or the property they received for it would have been avoided. The court found that the debtors were recklessly indifferent to the truth of the information contained in their schedules and statement of affairs.

In this case, the Debtor's attorney was not obliged to assume that the Debtor was lying to her about the Property being owned by her husband. The Debtor was and is not unsophisticated. She has a college degree, she worked for the Phillippines' Department of Justice and she ran a business. In fact, the court finds that the Debtor purposefully and systematically misrepresented her interest in the Property to the court in Wisconsin, to her attorney in this case, to this court and to the case trustee.[2] When she filed her bankruptcy case in Wisconsin, she already owned the Property but did not publicly record the deed until after that case was closed.

She told her lawyer that her husband owned the Property but when the trustee asked her about her husband's assets at the §341 meeting, she said he didn't own any assets other than a

---

[2]"As a general rule, the trustee is entitled to rely on the truthfulness and accuracy of the debtor's schedules and is not required to assume that the debtor is lying." Anderson v. Vereen, (In re Vereen), 219 B.R. 691, 696 (D.S.C. 1997).

business. If the Debtor's failure to disclose her interest in and income from Mid-Am was the only basis for this complaint, Torre would lose. But she had no reason to investigate the Debtor's real estate holdings, any more than the Debtor's lawyer or the case trustee would have. The Debtor listed nothing on her bankruptcy schedules to indicate her ownership interest and she lied to the trustee at her §341 hearing. There was simply nothing to put the trustee or any of the creditors on notice that the Debtor was concealing a significant asset. Torre has proved her case by a preponderance of the evidence.

## Conclusion

For the reasons set forth above, the Debtor's discharge will be revoked.

**ENTERED:**

Date: October 18, 2007

John D. Schwartz
United States Bankruptcy Judge